MARY J. O'CONNOR *vs.* DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY & others.

Suffolk. January 5, 1979. — March 27, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS & LIACOS, JJ.

*Employment Security,* Eligibility for benefits, Federal unemployment
assistance.

A claimant for unemployment compensation under Title II of the
Emergency Jobs and Unemployment Assistance Act of 1974 was
not ineligible for such benefits by the fact that after her discharge
from full-time employment by an employer exempt from coverage
under G. L. c. 151A she retained part-time employment covered by
c. 151A and had made sufficient base period contributions to be
eligible potentially for some measure of assistance under c. 151A,
§ 24 *(a).* [636-637]

The level of unemployment compensation benefits awarded a claim-
ant under Title II of the Emergency Jobs and Unemployment As-
sistance Act of 1974 was adjusted to reflect income earned from
part-time employment in accordance with the provisions of G. L. c.
151A, § 29 *(b).* [637-638]

PETITION filed in the Municipal Court of the City of
Boston on September 30, 1977.

The case was heard by *Morrissey,* J.

*Harvey S. Shapiro* for the plaintiff.

*George J. Mahanna,* Assistant Attorney General, for
the Director of the Division of Employment Security.

HENNESSEY, C.J. Discharged from her full-time job, the
claimant, Mary J. O'Connor, sought unemployment com-
pensation under Title II of the Emergency Jobs and
Unemployment Assistance Act of 1974 (Act), Pub. L. No.
93-567, 88 Stat. 1845 (1974), 26 U.S.C. § 3304 (note) (1976),
because her employer was exempt from coverage under
the Massachusetts Employment Security Law, G. L.

c. 151A. An initial denial of benefits by the Director of the Division of Employment Security (director) was affirmed by the board of review of the Division of Employment Security (board). The claimant appealed the denial to the Municipal Court of the City of Boston, where the board's decision was upheld. As provided in G. L. c. 151A, § 42, it is our duty to review the lower court's judgment. We reverse.

The facts may be simply stated. The claimant worked full-time as a chemist for the Trustees of Health and Hospitals (Health and Hospitals), a nonprofit agency in Boston, from September 9, 1974, until January 31, 1977. On the latter date the claimant was laid off because the agency's Federal grant had expired. In addition to being employed full-time, the claimant, since November 2, 1974, was employed as a part-time cashier at the Copley Plaza Hotel in Boston, working approximately fifteen hours each weekend. The claimant held this job at the time of her termination from Health and Hospitals and continued to hold it at the time she applied for benefits.

Since Health and Hospitals was an employer-entity exempt from coverage under the Massachusetts Employment Security Law,[1] the claimant, upon discharge, sought unemployment benefits under § 203 of the Special Unemployment Assistance Program (SUAP), a temporary federally-funded program created by Title II of the Emergency Jobs and Unemployment Assistance Act of 1974, administered by the Division of Employment Security, and designed to provide assistance to unemployed workers "not eligible for compensation under any [other] State or Federal unemployment compensation law." Pub. L. No. 93-567, § 203(1), 88 Stat. 1850 (1974). The director denied the claim on the basis that the claim-

---

[1] Because Health and Hospitals was a public agency financed by State and Federal grants, it was not subject to the requirements of c. 151A. See G. L. c. 151A, § 6. Cf. *Proprietors of the Cemetery of Mount Auburn* v. *Unemployment Compensation Comm'n,* 305 Mass. 288 (1940).

634 377 Mass. 632

O'Connor *v.* Director of the Division of Employment Security.

ant was "monetarily eligible" for State benefits under G. L. c. 151A, § 24(*a*). Upon appeal from the director's denial of her application, a hearing was held before a review examiner for the board, and it was found that during the fifty-two week period immediately preceding her layoff, the claimant had earned approximately $9,-200, or an average of $177 a week, from her "uncovered" employment at Health and Hospitals, while during the same period her earnings from her part-time job totalled nearly $2,200, or an average of $42 a week. Since employees of the Copley Plaza Hotel were potentially eligible for benefits under the Massachusetts Employment Security Program, and because O'Connor had made sufficient base period contributions under G. L. c. 151A, § 24(*a*), to receive such assistance, the review examiner determined that the claimant was entitled to regular benefits under G. L. c. 151A, § 29(*a*), and was, therefore, ineligible for Federal aid.

The claimant appealed, but the board upheld the review examiner's findings and conclusion. The claimant then filed a petition for review in the Municipal Court of the City of Boston, where, after a hearing, the decision of the board was affirmed by a judge of that court. Because we believe the board has erroneously applied both State and Federal law, we reverse the judge's determination affirming the decision of the board.

Our inquiry begins with an examination of Title II of the Emergency Jobs and Unemployment Assistance Act of 1974. Title II was enacted to enable the Federal government to provide temporary unemployment insurance coverage "equivalent to that under State UI [unemployment insurance] laws" to the upwards of twelve million workers not then covered by such laws.[2] H.R. Rep. No.

---

[2] As stated in § 201 of the Act: "It is the purpose of this title to establish a temporary Federal program of special unemployment assistance for workers who are unemployed during a period of aggravated unemployment and who are not otherwise eligible for unemployment allowances under any other law." Pub. L. No. 93-567, § 201, 88 Stat. 1850 (1974).

1528, 93d Cong., 2d Sess. (1974), reprinted in [1974] U.S. Code Cong. & Ad. News 6756, 6761. Significantly, the program is administered by State agencies, and the terms and conditions of each State's unemployment compensation program are applied to claims brought under the Act. Pub. L. No. 93-567, § 207, 88 Stat. 1852 (1974). See ·Martinez v. Dunlop, 411 F. Supp. 5, 7 (N.D. Cal. 1976), aff'd sub nom. Martinez v. Marshall, 573 F.2d 555 (9th Cir. 1977); Eboch v. Unemployment Compensation Bd. of Review, 39 Pa. Commw. Ct. 268 (1978). The Federal government, however, bears the ultimate financial burden. Pub. L. No. 93-567, § 202, 88 Stat. 1850 (1974).[3]

In view of the purpose of the Federal program, § 203 of the Act demands that, as a prerequisite to qualification for SUAP benefits, an individual be "[in]eligible for compensation under any State or Federal unemployment compensation law." Congress wished to limit the scope of Title II's protection to those unemployed who had exhausted their benefits under existing law or those who were excluded from unemployment insurance coverage altogether. H.R. Rep. No. 1528, 93d Cong., 2d Sess. (1974), reprinted in [1974] U.S. Code Cong. & Ad. News 6761. See also County of Los Angeles, Cal. v. Marshall, 442 F. Supp. 1186, 1192 (D.D.C. 1977). In the case now before us, the director determined that this requirement mandated the claimant's exclusion from SUAP coverage. Because the claimant had made sufficient contribution from her part-time job at the Copley Plaza Hotel for some

---

[3] As enacted, the Special Unemployment Assistance Program was scheduled to expire on March 31, 1976. However, Congress subsequently passed legislation requiring that those employees newly covered by SUAP be assimilated into regular State unemployment compensation systems. Pub. L. No. 94-566, § 115, 90 Stat. 2670 (1976). (See G. L. c. 151A, §§ 1(i), 4A, St. 1977, c. 720, § 1, for the Commonwealth's compliance with this mandate.) As a result, SUAP was extended through June 30, 1978, in order to provide a smooth transition period. Pub. L. No. 94-566, § 601, 90 Stat. 2689 (1976).

measure of State unemployment compensation, the director found the claimant eligible for State benefits, and accordingly, ineligible for Federal assistance.

We think the board's decision in this case is plainly incorrect. Under G. L. c. 151A, one does not become "eligible" for unemployment compensation simply by virtue of sufficient base period earnings. Section 29 (a) of that chapter, the provision under which the board deemed the claimant eligible for State benefits,[4] requires an individual to be "in total unemployment" before benefits are payable. "Total unemployment," as expressly defined in the statute, refers to a period in which one "performs no wage-earning services whatever, and for which [one] receives no remuneration, and in which, though capable of and available for work, [one] is unable to obtain any suitable work." G. L. c. 151A, § 1(r)(2), as appearing in St. 1951, c. 763, § 1. See Cusack v. Director of the Div. of Employment Security, 376 Mass. 96 (1978). Since the claimant continued working at her part-time job after her discharge from Health and Hospitals, it was erroneous for the board to consider her in "total unemployment," and thus eligible for benefits under our § 29(a).

We recognize that a claimant may be disqualified from receiving SUAP benefits if he or she is eligible to receive any amount, no matter how modest, of State unemployment compensation. See Steinberg v. Unemployment Compensation Bd. of Review, 34 Pa. Commw. Ct. 294 (1978); Latimer v. Unemployment Compensation Bd. of Review, 27 Pa. Commw. Ct. 348 (1976); Phelosof v. Ross, 54 App. Div. 2d 1062 (N.Y. 1976); Blomquist v. Ross, 54 App. Div. 2d 118 (N.Y. 1976); Swyer v. Levine, 52 App. Div. 2d 707 (N.Y. 1976). We likewise assume that an employee cannot render himself eligible for SUAP benefits by withdrawing a claim for benefits under c. 151A. The claimant

---

[4] Due to the claimant's relatively low base period earnings from her employment at the Copley Plaza Hotel, her only possible source of entitlement under c. 151A was § 29 (a).

in this case, however, was genuinely ineligible to receive any form of pre-existing unemployment assistance; thus, she was rightfully entitled to receive SUAP benefits.[5]

Although we think it clear that the claimant should have been deemed eligible for SUAP benefits, it is possible that, in view of her part-time work, some question remains concerning the correct determination of the claimant's benefit amount. The legislative history of the Federal law is silent regarding the formula to be applied when an otherwise eligible claimant receives outside earnings. But, the Act itself directs each State to use its unemployment compensation law as a guide for resolving problems in Title II administration, Pub. L. No. 93-567, § 207, 88 Stat. 1852 (1974),[6] and Department of Labor regulations state that "[t]he weekly amount of SUA payable for a week of partial or part-total unemployment shall be determined under the provisions of the applicable State law which apply to regular compensation." 20 C.F.R. § 619.5(b) (1978). Accordingly, we observe that when, under the Commonwealth's regular unemployment compensation program, an employee in partial unemployment is eligible for unemployment benefits, the level of benefits awarded is adjusted to reflect the income earned after application of a "disregard" formula. G. L. c. 151A, § 29 (b).[7] We believe it appropriate, if not re-

---

[5] In addition, the board's determination, if permitted to stand, would pose a substantial work disincentive. It would mean, in effect, that but for her part-time employment, the claimant would have been eligible for SUAP benefits equal to or greater than the total wages she earned as a cashier.

[6] See also 20 C.F.R. § 619.10 (1978).

[7] General Laws c. 151A, § 29 (b), provides: "An individual in partial unemployment and otherwise eligible for benefits shall be paid the difference between his aggregate remuneration with respect to each week of partial unemployment and the weekly benefit rate to which he would have been entitled if totally unemployed; provided, however, that earnings up to forty per cent of his benefit rate shall be disregarded. In no case shall the amount of earnings so disregarded exceed thirty dollars or be less than ten dollars. Such partial benefit amount

quired, that this procedure be utilized in determining SUAP benefits in the same fashion as it is applied to claims under c. 151A.

Therefore, we reverse the decision of the Municipal Court of the City of Boston and remand the case to the Division of Employment Security for reconsideration of the claimant's application consistent with this opinion.

*So ordered.*

---

shall be raised to the next highest dollar if it includes a fractional part of a dollar." St. 1976, c. 473, § 9, effective by § 20, January 9, 1977.